245 N.J. Super. 124 (1990)
584 A.2d 281
LAWRENCE ZAZZO, PLAINTIFF-RESPONDENT,
v.
LYNN L. ZAZZO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 1990.
Decided December 28, 1990.
*126 Before Judges DREIER and ASHBEY.
Barbara Berman argued the cause for appellant (Barbara Berman, on the brief).
Paul R. Melletz argued the cause for respondent (Paul R. Melletz, on the brief).
The opinion of the court was delivered by ASHBEY, J.A.D.
Defendant Lynn Zazzo appeals from parts of a Family Part order which decreased the child support obligations of plaintiff Lawrence Zazzo from $750 to $375 per month for seven months of the year while one of his sons was attending college. He did not submit a current Case Information Statement (CIS) with his motion. The judge ruled that the moving party seeking a decrease in child support need not provide up-to-date financial disclosure where the moving party's prima facie case asserted a decrease in the custodial parent's need for child support. See R. 5:5-4. He further ruled that Lawrence had demonstrated a change in circumstances, although the decrease was clearly contrary to the terms of a property settlement agreement. Finally, the judge reduced support without findings of fact concerning the custodial parent's present needs or her present ability to pay for the remaining needs of the parties' two children. See R. 5:6A.[1]
Lynn and Lawrence Zazzo were married on August 30, 1969. Their two sons were born December 15, 1970 and July 9, 1972, respectively. Their April 26, 1985 agreement provided that:
1. The Husband shall pay to the Wife for the support of the two minor children of the marriage the sum of $1,500.00 per month allocated at $750.00 for *127 each of the two children per month. This amount is to be paid directly to the Wife in two equal payments of $750.00 due on the 1st and 15th of each month.
2. The Husband's obligation for child support shall continue until each child is emancipated. The term "emancipation" shall be defined for the purposes of this Agreement as follows:
A. The completion of the child's formal education on a matriculated basis, whether it be graduation from a four year undergraduate school or highschool, it being understood that so long as the child is diligently pursuing his or her formal education and obtaining passing grades, the child shall not be considered emancipated.
B. Upon the completion of any of the aforesaid segments of the child's education, and upon failure to commence the next segment of his or her education, or upon leaving school, the child shall be deemed emancipated unless failure to continue on with his or her education has resulted from illness or injury or some other cause beyond the child's control.
C. The marriage of the child.
D. Entry into the military or armed forces of the child.
In April 1985, almost simultaneously with the divorce, Lawrence had relinquished his interest in approximately $60,000 from his uncle's estate to his parents. His father made financial provisions for the two grandchildren's education, including covering the balance due after loans and scholarships for the eldest child's first year at Yale University. The judge considered this outside provision for college tuition and board to be a change in circumstances.
As noted, Lawrence refused to provide current income information with his motion. Lawrence's 1984 tax return showed that his gross income was $65,944.00. Lynn's 1985 CIS showed a 1984 income of $6,569.00. Lynn's gross income in 1988 was $24,138.00. Lynn's 1989 CIS gave her current net monthly income as $1,640.32 and her monthly expenses as $3,825.25.[2]
*128 Lynn first appeals from the judge's ruling that no CIS was necessary from the parent applying to reduce a support order based on a decrease in the child's "need." As of the time of the motion, R. 5:5-2 provided:
(a) Applicability. The case information statement required by this rule shall be filed and served in all contested family actions, except summary actions, in which there is any issue as to custody, support, alimony or equitable distribution. In all other family actions, a case information statement may be required by order on motion of the court or a party.
(b) Time and Filing: Except as otherwise provided in R. 5:7-2, a case information statement or certification that no such statement is required under subparagraph (a) shall be filed by each party with the clerk in the county of venue within 20 days after the filing of an Answer of Appearance. The case information statement shall be filed in the form set forth in Appendix V or these rules. The court may, on its own motion and notice to the parties, dismiss a party's pleadings for failure to have filed a Case Information Statement. If dismissed, said pleadings shall be subject to reinstatement upon such conditions as the court may deem just.
(c) Amendments. Parties are under a continuing duty to inform the court of any changes in the information supplied on the case information statement. All amendments to the statement shall be filed with the court no later than 20 days before the final hearing. The court may prohibit a party from introducing into evidence any information not disclosed or it may enter such order as it deems appropriate.
(d) Income Tax Returns. Following the entry of a final judgment, the court shall order the return to the parties of any income tax returns filed with a case information statement under this rule.
In his written decision, the judge ruled:

R. 5:5-2(a) is the threshold Rule. When the action is filed for the first time  and this relates to all actions in the Family Part  the court must be furnished with all the information necessary for its decision. This includes the parties' financial information in the form of the Case Information Statement. R. 5:5-4 then takes up the question of modification of an Order or Judgment resulting from such earlier action.
R. 5:5-4 then provided:
When a motion is brought for the modification of an order or judgment for alimony or child support, the pleading filed in support of the motion shall have appended to it a copy of the prior Case Information Statement or Statements filed before entry of the order or judgment sought to be modified.
The judge said,
Each case is to be judged ... on its own peculiar facts, and the court must be allowed to decide whether in a given case disclosure is necessary for its decision. In the instant Motion, disclosure of the plaintiff's current financial *129 status is not required for the court's disposition of the Motion for modification of child support. To so order would be a pointless exercise in futility.
Although our primary purpose in writing is to examine the concept of "need" when a supporting parent contends a child's needs have decreased, we are first satisfied that the judge's interpretation of the Rules was incorrect. While the current rule, R. 5:5-4, effective September 4, 1990, requiring a current CIS be filed with any support modification motion[3] was not in effect when this motion was heard, the legislative history of that change indicates that the new rule clarified what the Supreme Court considered to be the original meaning of R. 5:5-4. See Report of the Family Division Practice Committee, 125 N.J.L.J. Index Page 385, 397 (February 15, 1990). Other rules, in effect at the time the motion was heard, indicate that complete financial information of both parents was necessary for any order of child support. See R. 5:6A, effective January 1989, which provides that Rule Appendix IX guidelines shall be applied when an application is made to modify child support, assuming there has been a change of circumstances. PRESSLER, Current N.J. COURT RULES, R. 5:6A. Those rules are further amplified in Appendix IX-A, "Considerations in the Use of Child Support Guidelines", where the steps necessary to calculate the appropriate amount of child support include providing information concerning available family income so that "[t]he child support obligation is then divided proportionately between the parents based upon their contribution to the family income." PRESSLER, Current N.J. COURT RULES, Appendix IX-A. We have also ruled that child support guidelines applied to motions for modifications of child support. Chobot v. Chobot, 224 N.J. Super. 648, 654, 541 A.2d 251 (App.Div. 1988).[4]
*130 More than a misinterpretation of the Rules, however, there was a misconception concerning a "child's needs" which was not based upon interpreting rules of discovery. The clear implication of plaintiff's position, accepted by the judge, is that children, like a former spouse, are entitled to be supported only at the level of need established by parental income during the marriage. That interpretation of the law is simply wrong. Lepis v. Lepis, 83 N.J. 139, 150, 416 A.2d 45 (1980). Children are entitled to have their "needs" accord with the current standard of living of both parents, which may reflect an increase in parental good fortune. We have recently ruled that a father was obliged to share a post-divorce inheritance with his children, and even reimburse college expenses retroactively to the noncustodial parent. Weitzman v. Weitzman, 228 N.J. Super. 346, 355, 549 A.2d 888 (App.Div. 1988), certif. denied 114 N.J. 505, 555 A.2d 623 (1989). There is no divorce between parent and child.
The Legislature has dictated that certain factors must be considered in setting support. These factors reinforce the distinction between spousal support and child support in cases not covered by court rule. N.J.S.A. 2A:34-23 provides:
a. In determining the amount to be paid by parent for support of the child and the period during which the duty of support is owed, the court in those cases not governed by court rule shall consider, but not be limited to, the following factors:
(1) Needs of the child;
(2) Standard of living and economic circumstances of each parent;
(3) All sources of income and assets of each parent;
(4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children, including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;
(5) Need and capacity of the child for education, including higher education;
(6) Age and health of the child and each parent;
(7) Income, assets and earning ability of the child;

*131 (8) Responsibility of the parents for the court-ordered support of others;
(9) Reasonable debts and liabilities of each child and parent; and
(10) Any other factors the court may deem relevant.[5]
These child support factors are to be contrasted with those in N.J.S.A. 2A:34-23b, particularly b(4), in which the Legislature directed that the standard of living of the marriage should be considered when determining alimony.
Although not appealed from, we are also concerned about the implication that, because the child now needed two shelters, Lynn's need for the funds to maintain a year-round home for him had decreased. Lawrence even urged that in order to save money Lynn should leave her home. But see Lepis, 83 N.J. at 150, 416 A.2d 45. See also Avery v. Avery, 209 N.J.Super 155, 160, 507 A.2d 242 (App.Div. 1986); Salzano v. Salzano, 74 N.J. Super. 408, 412, 181 A.2d 414 (Ch.Div. 1962). While the agreement did not provide for alimony for Lynn, a nurse, nothing in the law or the agreement suggests that the needs Lynn shared with the children must be based on her $24,000 income, while the children's other needs should be judged by Lawrence's presumably more than $65,000 income.[6] A custodial parent's needs may not be entirely divorced from those of the children. Cf. Cooper v. Cooper, 99 N.J. 42, 491 A.2d 606 (1984). If there is some incidental benefit to the custodial parent from the roof expenses component of child support, the law is not offended.
We also agree with defendant that the judge's ruling that there had been a change of circumstances was wrong. It was undisputed that the agreement provided that full child support should continue during the children's college education. Under N.J.S.A. 2A:34-23, "Orders [for support] ... may be *132 revised and altered by the court from time to time as circumstances may require," including an order resulting from an agreement. See Lepis v. Lepis, 83 N.J. at 146, 416 A.2d 45; Dunne v. Dunne, 209 N.J. Super. 559, 565, 508 A.2d 273 (App.Div. 1986), but the moving party has the burden of establishing the circumstances that warrant the change. In Lepis, 83 N.J. at 151, 416 A.2d 45, the Court identified as "changed circumstances," warranting upward support modification, an increase in the cost of living and the maturation of children. Neither of these events was precisely covered in the Lepis agreement, although they were foreseeable. In the case before us, given the academic ability of the child, higher education was foreseeable. Continuing child support, on the other hand, was specifically provided for in the agreement.
In his written opinion the judge said, "Lepis also instructs us that the fact that it was anticipated or foreseen that [the child] would attend college is immaterial." "... objective notions of foreseeability  are all but irrelevant. The proper criteria are ... whether the agreement or decrease has made explicit provision for the change." Disregarding the fact that the Zazzo agreement did provide for support continuation, Lepis does not say that agreements specifying child support under anticipated circumstances may be modified downward absent a change in ability to pay. In Smith v. Smith, 72 N.J. 350, 360, 371 A.2d 1 (1977), our Supreme Court ruled,
In each case the court must determine what, in the light of all the facts presented to it, is equitable and fair, giving due weight to the strong public policy favoring stability of arrangements.
Compare Beck v. Beck, 239 N.J. Super. 183, 190-191, 570 A.2d 1273 (App.Div. 1990) (father entitled to Lepis hearing after demonstrating his decreased ability to pay child support while assuming college expenses).
The order appealed from is reversed.
NOTES
[1] Lynn appeals only from that part of the order denying her request for Lawrence to supply a current CIS and from the judge's ruling that there was a change of circumstances. Although she appealed from a denial of her request for counsel fees, that point is not argued on appeal. See Matter of Bloomingdale Conval. Ctr., 233 N.J. Super. 46, 48 n. 1, 558 A.2d 19 (App.Div. 1989).
[2] We have noted that Lynn does not appeal from the calculations underpinning the judge's ruling that during the seven months while the eldest child was at Yale the support would be lowered to $375 per month, although her fixed expenses for shelter, presumably because she was still obliged to maintain bedrooms for the children, exceeded her net income. The only clearly related decrease in expense was her expense for food and school lunches. No calculation appears to justify the $375 decrease.
[3] See Amendments to The Rules of Court, 126 N.J.L.J. 34 (supplement to N.J.L.J., Thursday, July 19, 1990); the relevant amendment was preceded by a Supreme Court Directive, # 4-90.
[4] We recognize that there are cases in which a protective order concerning discovery of a second spouse's income tax returns is required. See DeGraaff v. DeGraaff, 163 N.J. Super. 578, 583, 395 A.2d 525 (App.Div. 1978). No such order was sought here.
[5] See also N.J.S.A. 9:17-53e, child support factors to be considered in the Parentage Act.
[6] There is a reference in the record to the child whose support was at issue traveling to Europe.